UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NEWELL NORMAND, Sheriff and                CIVIL ACTION
Ex-Officio Tax Collector for
the Parish of Jefferson

VERSUS                                     NO: 11-2476

COX COMMUNICATIONS, LLC                    SECTION: R

**ORDER AND REASONS**

Before the Court is plaintiff Newell Normand's motion to remand. Because comity concerns counsel against the exercise of federal jurisdiction in this case, the Court grants plaintiff's motion.

**I.   BACKGROUND**

This case arises out of a tax dispute between plaintiff Newell Normand, the sheriff and *ex officio* tax collector for Jefferson Parish, Louisiana, and defendant Cox Communications, Inc., a Delaware limited liability company with offices in Jefferson Parish. The dispute concerns the applicability of a Louisiana sales tax to Cox's video programming services. The tax is imposed "upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property,"

La. R.S. § 47:302(A), and "upon all sales of services." La. R.S. § 47:302(C)(1). Cox argues that because its video programming services are not "tangible personal property" and are not listed among the state's taxable "services," *see* La. R.S. § 47:301(14), they are not subject to the tax.

On December 30, 2010, the Parish issued and mailed two notices of tax delinquency assessing Cox for back taxes allegedly owed.[1] Cox was permitted any of three alternative remedies under the Uniform Local Sales Tax Code to challenge the Parish's sales tax assessments: (1) La. R.S. § 47:337.51 permitted Cox to request an administrative hearing to protest the assessment, and afforded a right to appeal to district court an administrative decision rejecting the post-assessment protest; (2) La. R.S. § 47:337.63 permitted Cox to pay the assessment under protest and sue for a refund in district court; and (3) La. R.S. § 47:337.64 permitted Cox to post a commercial bond or another security and sue in district court to contest the assessments.[2]

Cox claims to have availed itself of the first of these options, although the Parish contends that Cox's efforts were inadequate under the law. While La. R.S. § 47:337.51 was amended in January 2011, the parties do not dispute that the pre-

---

[1]    R. Doc. 13-1 at 2-3.

[2]    *See id.* at 3-4.

amendment version governs this case. That statute reads, in relevant part:

> A. Having assessed the amount determined to be due, the collector shall send a notice by certified mail to the taxpayer against whom the assessment is imposed.... This notice shall inform the taxpayer of the assessment and that he has **sixty calendar days from the date of the notice** to (a) pay the amount of the assessment; (b) request a hearing with the collector or; (c) pay under protest in accordance with R.S. 47:337.63.
>
> B. If any dealer shall be aggrieved by any findings or assessment of the collector, he may, **within thirty days of the receipt of notice of the assessment or finding**, file a protest with the collector in writing ... and may request a hearing. Thereafter, the collector shall grant a hearing to said dealer, if a hearing has been requested, and may make any order confirming, modifying or vacating any such finding or assessment....

La. R.S. § 47:337.51 (2010) (emphasis added). Part (A) of the above statute ostensibly affords a party 60 days to protest the assessment, while Part (B) offers only 30 days. As Cox filed its protest and request for a hearing with the Parish 55 days after the final assessment,[3] the timeliness of the protest thus depends upon the proper interpretation of the statute. The Parish contends that the notice requirement of La. R.S. § 47:337.51(A) does not set deadlines for invoking taxpayer remedies to challenge the assessment, but rather, fixes a time period during which the tax collector cannot execute a writ of distraint to collect the assessment. *See* R. Doc. 13-1 at 5. Cox, meanwhile, urges a reading that would grant a party the *later* of 60 days

---

[3] R. Doc. 16 at 4.

3

from "the date of the notice" under part (A) and 30 days from "the *receipt* of the notice" under part (B) in order to challenge the assessment. *See* R. Doc. 16 at 5.

Because Cox did not timely and properly invoke its remedies to challenge the assessment, the Parish contends that La. R.S. § 47:337.51(C) precludes a court from granting it relief from the assessment:

> (1) No assessment made by the collector shall be final if it is determined that the assessment was based on an error of fact or of law. An "error of fact" for this purpose means facts material to the assessment assumed by the collector at the time of the assessment to be true but which subsequently are determined by the collector to be false. "Error of law" for this purpose means that in making the assessment the collector applied the law contrary to the construction followed by the collector in making other assessments.
>
> (2) ***The determination of an error of fact or of law under this Subsection shall be solely that of the collector, and no action against the collector with respect to the determination shall be brought in any court, and no court shall have jurisdiction of any such action, it being the intent of this Subsection only to permit the collector to correct manifest errors of fact or in the application of the law made by the collector in making the assessment***; however, all reductions of assessments based on such errors, except estimated assessments made due to the failure of the taxpayer to file a proper tax return, must be approved and signed by the collector. Estimated assessments made due to the failure of the taxpayer to file a proper tax return may be corrected by the acceptance of the proper tax return and must be approved by the collector or his designee."

La. R.S. § 47:337.51(C) (emphasis added).

Once an assessment becomes final, La. R.S. § 47:337.45(A) affords the Parish three alternative remedies to enforce and collect the sales taxes owed: (1) assessment and distraint, as

provided in La. R.S. § 47:337.48 - 47:337.60; (2) summary court proceeding, as provided in La. R.S. § 47:337.61; and (3) ordinary suit under the provisions of the general laws regulating actions for the enforcement of obligations. The choice as to which remedy to pursue belongs to the Parish. *See* La. R.S. § 47:337.45(B) ("The collector may choose which of these procedures he will pursue in each case[.]").

The Parish selected the second option, which affords a unique set of procedural and evidentiary rules:

> (1) All such proceedings, whether original or by intervention or third opposition, or otherwise, brought by or on behalf of the taxing authority, or by or on behalf of the collector, for the determination or collection of any tax, interest, penalty, attorney fees, costs or other charge claimed to be due shall be summary and shall always be tried or heard by preference, in all courts, original and appellate, whether in or out of term time, and either in open court or chambers, at such time as may be fixed by the court, which shall be not less than two nor more than ten days after notice to the defendant or opposing party.
>
> (2) All defenses, whether by exception or to the merits, made or intended to be made to any such claim, must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed. This provision shall be construed to deny to any court the right to extend the time for pleading defenses; and no continuance shall be granted by any court to any defendant except for legal grounds set forth in the Louisiana Code of Civil Procedure.
>
> (3) That all matters involving any such claim shall be decided within forty-eight hours after submission, whether in term time or in vacation, and whether in the court of first instance or in an appellate court; and all judgments sustaining any such claim shall be rendered and signed the same day, and shall become final and executory on the fifth calendar day after rendition. No new trial, rehearing or

>devolutive appeal shall be allowed. Suspensive appeals may be granted, but must be perfected within five calendar days from the rendition of the judgment by giving of bond, with good and solvent security, in a sum double that of the total amount of the judgment, including costs. Such appeals, whether to a court of appeals or to the supreme court, shall be made returnable in not more than fifteen calendar days from the rendition of the judgment.
>
>(4) Whenever the pleadings filed on behalf of the taxing authority, or on behalf of the collector, shall be accompanied by an affidavit of the collector or of one of his assistants or representatives or of the counsel or attorney filing the same, that the facts as alleged are true to the best of the affiant's knowledge or belief, all of the facts alleged in said pleadings shall be accepted as prima facie true and as constituting a prima facie case, and the burden of proof to establish anything to the contrary shall rest wholly on the defendant or opposing party.

La. R.S. § 47:337.61.

On September 28, 2011, The Parish filed the action in state court to collect the taxes that it argues are owed.[4] On October 3, Cox removed the matter to this Court, invoking diversity jurisdiction.[5] The Parish filed this motion to remand on November 1, contending that comity considerations and/or other abstention

---

[4] The Parish notes that the final assessments are collectible against Cox within Jefferson Parish by execution of writs of distraint and sale issued on Sheriff Normand's own warrant, require no judicial approval, and are not subject to the risk of judicial injunction. But the territorial limitations of the Sheriff's jurisdiction render collection impractical without converting the final assessments into a court judgment executable against Cox's assets outside of Jefferson Parish. See R. Doc. 13-1 at 10.

[5] The parties do not dispute that they are diverse, nor that the amount-in-controversy requirement is met for jurisdiction under 28 U.S.C. § 1332.

principles require this Court to abstain.[6] Specifically, the Parish contends that this Court's exercise of jurisdiction will disrupt exercise of the tax administration remedies available to it by statute, as the Federal Rules of Civil Procedure, Federal Rules of Appellate Procedure, and Federal Rules of Evidence are all incompatible with La. R.S. § 47:337.61. Defendant opposes the Parish's motion.[7]

## II.   COMITY DOCTRINE

The plaintiff relies upon the recent Supreme Court case *Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323 (2010), for its proposition that comity concerns demand that federal courts "interfere as little as possible with the modes adopted by the state law to enforce the taxes levied under state law[.]"[8] *Levin* settled a circuit split regarding the comity doctrine's reach in cases challenging the constitutionality of state tax schemes. Before *Levin*, the Fourth and Tenth Circuits held that the principles of federalism and comity required federal abstention in certain tax cases beyond the ambit of the Tax Injunction Act

---

[6]     R. Doc. 13 at 1.

[7]     R. Doc. 16.

[8]     R. Doc. 13-1 at 12.

(TIA),[9] *see DIRECTV, Inc. v. Tolson,* 513 F.3d 119, 127 (4th Cir. 2008); *Hill v. Kemp*, 478 F.3d 1236, 1247 (10th Cir. 2007), while the First, Sixth, and Seventh Circuits held that the comity doctrine was merely coextensive with the TIA. *See Coors Brewing Co. v. Mendez-Torres*, 562 F.3d 3, 18 (1st Cir. 2009); *Commerce Energy, Inc. v. Levin*, 554 F.3d 1094, 1097 (6th Cir. 2009), *rev'd*, 130 S. Ct. 2323 (2010); *Levy v. Pappas*, 510 F.3d 755, 760-61 (7th Cir. 2007).

The Fourth and Tenth Circuits were vindicated in *Levin*, which held that the comity doctrine is more expansive than the TIA. The case involved a suit brought by natural gas marketers against the Ohio state tax commissioner challenging the constitutionality of three exemptions offered to their competitors only. *Levin*, 130 S. Ct. at 2328-29. Although the TIA did not apply, the Supreme Court noted nevertheless that "[c]omity's constraint has particular force when lower federal

---

[9] The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. It applies to actions for anticipatory relief and actions for declaratory relief, *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982), but does not bar federal jurisdiction over tax collection actions, nor limit defenses to such actions. *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 435 (1999). *See also Buchanan Cnty. v. Equitable Prod. Co.*, 773 F. Supp. 2d 638, 639 (W.D. Va. 2011) ("[T]he statute was modeled on other statutes preventing anticipatory actions brought by taxpayers to stop the initiation of collection proceedings and therefore was not intended to bar collection suits in federal court."). Thus, the TIA does not apply in this case.

courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* at 2330. But the Court was unclear about just how expansive the doctrine is, and in precisely what kinds of tax cases it is most pressing.

Cox contends that the comity doctrine does not apply in cases without a constitutional challenge to the state's tax laws. And while Cox has argued that the Parish violated its procedural due process rights by denying it a protest hearing, it insists inconsistently that it has *not* alleged that the underlying sales tax or the procedural statutes at issue are unconstitutional – either facially or as applied. This is incorrect, as Cox plainly argues that the tax scheme is unconstitutional as applied to Cox if the Parish has correctly interpreted the tax protest statute.

Cox's attempts to distinguish its constitutional challenge from those that concerned the *Levin* Court are unavailing. If this Court were to exercise jurisdiction and find a due process violation, as Cox urges, it would encroach upon the province of the state legislature by invalidating the remedial scheme it chose. For Cox to win its due process claim would require not a simple exercise of statutory interpretation, but rather, an injunction against enforcement of a statutory provision based upon the Constitution's due process dictates. This is indeed an example of the federal overreach that the *Levin* Court feared.

Moreover, limiting *Levin* as Cox suggests does not speak to the Supreme Court's other stated reasons for providing the comity doctrine a broader scope than the TIA. Besides a concern over available remedies, the Court noted broadly that "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Id.* at 2330 (quoting *Dows v. Chicago*, 78 U.S. 108 (1871)). The Court recited Justice Brennan's "cogent" explanation of "the special reasons justifying the policy of federal noninterference with state tax collection":

> The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.

*Id.* at 2330, n.2 (quoting *Perez v. Ledesma*, 401 U.S. 82, 128, n.17 (1971) (opinion concurring in part and dissenting in part)). *These* concerns are especially salient in this case as Louisiana

has adopted a detailed framework for adjudicating tax disputes.[10] If out-of-state defendants were able to make an end run around this framework simply by refusing to pay their taxes, defaulting on their administrative rights, and removing the subsequent collection actions to federal court, the administration of Louisiana's tax code would cease to be the streamlined process that the legislature designed, and foreign businesses would receive an unwarranted procedural windfall. The "summary court proceeding" afforded by La. R.S. § 47:337.61 would cease to be an option for the collector.

In other ways, as well, a federal court's tinkering with a state's tax enforcement mechanisms can threaten federal-state relations to a commensurate degree as constitutional invalidation of the substantive provisions of taxation statutes. Hundreds of thousands of dollars of potential tax revenue hinge upon this Court's determination of the tax's applicability to Cox. But perhaps more importantly, a finding for Cox on its due process claim would present collateral consequences impacting the state's ability to collect potentially millions more in taxes owed by third parties who protested their assessments outside of the 30 day window. The *Levin* Court expressed concern about federal involvement in a state's tax "scheme," which logically includes not only the statutory wording, but the enforcement procedures

---

[10]   *See* R. Doc. 13-1 at 2-11.

necessary to give effect to the laws. The Court recognized that the TIA is "but a partial codification of the federal reluctance to interfere with state taxation," *Levin*, 130 S. Ct. at 2332, and in so doing, carved out broader conceptual space for the comity doctrine to preserve state autonomy in cases like this.

Indeed, while the Supreme Court did not clearly define the contours of the comity doctrine in *Levin*, it delineated several factors that compel federal abstention here. Included are those cases in which: (1) plaintiffs seek review regarding matters over which the state enjoys wide regulatory latitude; (2) the claimed constitutional violation does not require heightened judicial scrutiny; (3) the plaintiffs seek aid in the federal court to improve their competitive position; (4) the state court is more familiar with state legislative preferences; and (5) the federal court's remedial options are constrained. *Id.* at 2336. Here, save for the third, the factors counsel in favor of abstention. Defendant seeks intervention into Louisiana's tax scheme, where the state's policies should be subject to minimal interference. *See id.* at 2330 (noting the "special reasons justifying the policy of federal noninterference with state tax collection") (quoting *Perez*, 401 U.S. at 128, n.17). The claimed constitutional violation "does not involve any fundamental right or classification that attracts heightened judicial scrutiny." *Id.* at 2336. *See also Mathews v. Eldridge*, 424 U.S. 319, 335

12

(1976) (noting that procedural due process claims are subject to a balancing test weighing (1) the importance of the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the importance of the state interest involved and the burdens which any additional or substitute procedural safeguards would impose on the state). The state court is more familiar with Louisiana's tax laws and the intent of its legislature in crafting them.[11] And finally, because "the TIA stands in the way of any decree that would enjoin collection of a tax under State law," *Levin*, 130 S. Ct. at 2335 (internal quotation marks omitted), a state court has greater latitude to act should it find constitutional infirmity in the procedural provisions of the tax code.

*Levin* factors notwithstanding, Cox argues next that the same "respect for state functions" underlying the comity doctrine also underlies the TIA - the latter being no bar to state-initiated collection actions. *See Acker*, 527 U.S. at 433-34 (holding that the TIA does not bar the exercise of federal jurisdiction over a tax collection suit initiated by the taxing authority, and indicating that the taxpayer may assert defenses to the validity

---

[11] In fact, as the procedural statute at issue in this case was amended in January of 2011 and the ambiguity resolved, the state courts are in a unique position to ascertain the intent of the Louisiana legislature, and the meaning to be given to the pre-amendment version of that statute.

of the tax in that action). Thus, argues Cox, courts should be wary of interpreting the comity doctrine to require abstention in cases where the TIA proves no bar to jurisdiction. Critically, however, *Acker* required interpreting Congress's intent in passing the TIA - a significantly different endeavor than determining the appropriate boundaries of a prudential doctrine limiting federal incursion into state affairs. While both the TIA and the comity doctrine might be homages to federalism and comity, the TIA reflects Congress's assessment of appropriate federal-state relations, while the comity doctrine reflects the Supreme Court's. As the upshot of *Levin* is that the comity doctrine is in fact *broader* than the TIA, defendant's syllogism fails.

Also unavailing is defendant's argument that this judicial district's record of exercising jurisdiction in similar collection actions indicates that the Court must do the same here.[12] As already discussed, *Levin* opened the door to a more

---

[12] Cox cites the following Eastern District of Louisiana cases in support of this argument: *Sch. Bd. of St. Charles v. Quala Systems, Inc.*, 159 F. Supp. 2d 295 (E.D. La. 2001) (denying motion to remand despite parish's objections rooted in the TIA and 11th Amendment); *Sch. Bd. of St. Charles v. Roxco, Ltd.*, 2001 WL 283094 (E.D. La. 2001) (same); *Sch. Bd. of St. Charles v. Jesta Towers, Inc.*, 2004 WL 1460194 (E.D. La. 2004) (remanding because the amount in controversy was insufficient for federal jurisdiction, but rejecting the argument that the case should be remanded based upon the TIA); *St. Tammany Parish Tax Collector v. Barnesandnoble.com*, 481 F. Supp. 2d 575 (E.D. La. 2007) (reaching the merits in a tax collection action removed from Louisiana state court); *Sch. Bd. of St. Charles v. Shell Oil*, 2008 WL 1730095 (E.D. La. 2008) (reaching the merits in a tax collection action filed by the parish in federal court).

robust conception of comity than that which existed at the time these pre-*Levin* Eastern District opinions were decided. In fact, these cases do not discuss comity at all - a fact that defendant dismisses as unimportant since "comity may be raised by the court *sua sponte* at any time[.]"[13] But merely that a court *may* raise the comity issue or any abstention doctrine *sua sponte* does not mean that, in practice, it will. *See Sch. Bd. of St. Charles v. Quala Sys.*, 159 F. Supp. 2d 295, 299 (E.D. La. 2001) (finding, in a tax collection action, that abstention was not raised by the plaintiff and was "not manifestly evident such that the court would abstain *ex proprio motu*"); *Jefferson City v. Cingular Wireless LLC*, 531 F.3d 595, 605 (8th Cir. 2008) (noting that, in part because the district court "heard no argument that it should abstain from hearing the case," it did not abuse its discretion by exercising jurisdiction in a tax collection action). Thus, these earlier Eastern District cases are not determinative here when (1) the comity doctrine was not actually raised in those cases, and (2) the scope of the doctrine was more limited than it is today. In fact, since *Levin*, other federal courts, including one from this district, have declined jurisdiction on comity grounds in suits raising constitutional challenges to a state's tax scheme not otherwise banned by the TIA. *See, e.g., ANR*

---

[13]   R. Doc. 16 at 14 (citing *Bellotti v. Baird*, 428 U.S. 132, 143, n.10 (1976)).

*Pipeline Co. v. La. Tax Comm'n,* 2011 U.S. Dist. LEXIS 5976 (E.D. La. 2011)*, aff'd,* 646 F.3d 940 (5th Cir. 2011) (involving a Commerce Clause challenge to a state tax); *Joseph v. Hyman,* 2010 U.S. Dist. LEXIS 91580 (S.D.N.Y. 2010)*, aff'd,* 659 F.3d 215 (2d Cir. 2011) (Privileges and Immunities Clause challenge); *Swift Frame v. City of San Diego*, 2011 U.S. Dist. LEXIS 106618 (S.D. Cal. 2011) (Due Process Clause and Equal Protection Clause challenge); *United States v. Oregon*, 2011 U.S. Dist. LEXIS 1107 (D. Or. 2011) (Supremacy Clause challenge); *Coors Brewing Co. v. Mendez-Torres*, 787 F. Supp. 2d 149 (D.P.R. 2011) (Commerce Clause challenge).

Finally, Cox cites two post-*Levin* cases as examples of federal courts declining to apply the comity doctrine in what Cox contends are similar circumstances. But neither case included a constitutional challenge to a state's tax laws, and neither case threatened the state's administration of its own statutes. *See Buchanan Cnty. v. Equitable Prod. Co.*, 773 F. Supp. 2d 638, 640 (W.D. Va. 2011) (denying motion to remand county's mineral severance tax collection action based in part on comity grounds, since "there is no challenge to the state tax law, and federal jurisdiction will not result in federal interference with the state's administration of its taxing authority"); *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1166 (W.D. Wash. 2010) (exercising jurisdiction over taxpayer's request for an injunction against

16

state taxing agency's information request, since "Amazon's requests for relief do not require the Court to restrain North Carolina in assessing or collecting a tax from Amazon or to pass judgment on the constitutionality of North Carolina's taxation system"). Defendant's cases are thus inapposite.

Exercise of jurisdiction in this case would bring *two* discrete and unrelated issues, uniquely of local concern, into federal court: (1) whether the Parish's initial tax assessment comported with La. R.S. § 47:302, and (2) whether the Parish denied Cox a protest hearing in violation of its due process rights. The constitutional dimension of the latter brings Louisiana's streamlined system for adjudicating tax disputes into the crosshairs of the federal judiciary. The logic of *Levin* counsels against such a result.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the comity doctrine requires this court to decline to exercise its jurisdiction over this case. Plaintiff's motion to remand is GRANTED.

New Orleans, Louisiana, this 30th day of January, 2012.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

17